UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBORAH ANN BYINGTON,                    Case No. 15-10016

           Plaintiff,                 Judith E. Levy
v.                                       United States District Judge

COMMISSIONER OF SOCIAL SECURITY,         Stephanie Dawkins Davis
                                         United States Magistrate Judge

           Defendant.

_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 20, 23)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On January 5, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Judith E. Levy referred this matter to Magistrate Judge Michael Hluchaniuk, which was subsequently reassigned on January 5, 2016 to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims.  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 20, 23).  The cross-motions are now ready for report and recommendation.

1

B.   Administrative Proceedings

Plaintiff filed the instant claim for a period of disability and disability insurance benefits on February 27, 2012.  (Dkt. 14-5, Pg ID 111-114).  In her application, plaintiff alleged a disability beginning February 16, 2010.  The Commissioner initially denied plaintiff's disability application on June 28, 2012.  (Dkt. 14-3, Pg ID 55-66).  Thereafter, plaintiff requested an administrative hearing, and on September 11, 2013, she appeared with counsel before Administrative Law Judge ("ALJ") Earl Ashford, who considered her case *de novo*.  (Dkt. 14-2, Pg ID 31-54).  In a September 25, 2013 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Dkt. 14-2, Pg ID 10-30).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on November 26, 2014, denied plaintiff's request for review.  (Dkt. 14-2, Pg ID 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1]  In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, wince it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 248 (6th Cir. 1996).  Therefore since district court review of the administrative record id limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the Court concludes that substantial evidence does not support the administrative law judge's residual functional capacity ("RFC") decision.  The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 20) be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **REVERSED AND REMANDED** for proceedings consistent with this Report and Recommendation.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born on November 7, 1960 and was 52 years old at the time of the administrative hearing.  (Dkt. 14-2, Pg ID 80).  She did not complete high school.  (*Id*. at 81).  Plaintiff had past relevant work as a receptionist and front desk receptionist.  (Dkt. 14-2, Pg ID 24).  The ALJ determined that per the Dictionary of Occupational Titles (DOT) a receptionist is classified as "semi-skilled" work at the "light" exertional level per the DOT and as performed by plaintiff, where front desk receptionist is classified as "semi-skilled" work at the sedentary exertional level per the DOT and as performed by plaintiff.  (*Id*.)

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that between the alleged onset date (February 16, 2010) and the

last date insured (March 31, 2016), plaintiff did not engage in any substantial gainful activity. (*Id*. at 15). At step two, the ALJ found that plaintiff had the following severe impairments: bilateral carpel tunnel syndrome (deQuervains surgery); status-post left knee surgery (chondral injury, synovitis repair, knee pain); degenerative disc disease (status-post lumbar fusion, back pain); and status-post multiple upper extremity surgeries. (*Id*.) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. (*Id*. at 16).

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) with: postural limitation of no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional balancing and stooping; no kneeling, crouching or crawling; occasional use of the bilateral lower extremities for operation of foot controls; manipulative limitation for occasional use of the bilateral upper extremities for reaching in all directions and for pushing and pulling; frequent use of the bilateral upper extremities for handling and fingering; environmental limitation to avoid concentrated exposure to extreme cold, extreme heat, vibrations and hazards such as moving machinery and unprotected heights; and no commercial driving.

(*Id*. at 17). At step four, the ALJ determined that plaintiff was not capable of performing any past relevant work. (*Id*. at 24). At step five, the ALJ concluded

that based on plaintiff's age, education, work experience and RFC, there were jobs
that existed in significant numbers in the national economy that plaintiff could
have performed and, therefore, she was not under a disability at any time from the
alleged onset date through the date of the ALJ's decision.  (*Id*. at 25).

    B.    <u>Plaintiff's Claims of Error</u>

    Plaintiff first argues that the ALJ's finding that plaintiff could perform a
range of light work is not supported by substantial evidence.  Plaintiff avers that
the ALJ's finding that she is capable of "light" work is critical because if she was
found to be capable of only "sedentary" work, she would "grid out" in accordance
with the Medical-Vocational Rules at age 50.  20 CFR Part 404, Subpart P, App 2,
Rule 201.09.  In addition, plaintiff argues that the vocational expert expressly
testified that there would be no work for plaintiff if she was limited to sedentary
work, rendering her completely disabled.

    Specifically, plaintiff argues that because the VE indicated that plaintiff was
incapable of performing sedentary work she is, therefore, as a matter of law, also
not capable of performing light work.  Pursuant to 20 CFR § 404.1567(b), "[i]f
someone can do light work, we determine that he or she can also do sedentary
work, unless there are additional limiting factors such as loss of fine dexterity or
inability to sit for long periods of time."  Plaintiff says that the Sixth Circuit has
applied this language to find that a claimant who cannot perform a wide range of

both light and sedentary work cannot be considered capable of a wide range of light work activity. *Damron v. Sec'y of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985). According to plaintiff, the Sixth Circuit has held that grid rules applicable to claimants with a capacity for light work cannot be applied to a claimant who can meet the demands of light work, but who cannot perform sedentary work.

The regulations define "light" work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. (20 C.F.R. § 404.1567).

Plaintiff argues that the ALJ misstated the conclusions of Dr. Lazzara as they related to her lifting and carrying limitations. The ALJ says that Dr. Lazzara determined that plaintiff could occasionally lift and carry 20 pounds, while plaintiff says that Dr. Lazzara opined that she could only occasionally lift or carry ten pounds, as well as 20 pounds. (Dkt. 14-13, Pg ID 889). As a result, plaintiff would not be able to engage in "frequent lifting or carrying of objects weighing up

to ten pounds," as required by someone in the "light" work category.  Plaintiff

argues that her reduced capacity to lift requires a lower exertional capacity, or a

"sedentary" work designation.[2]  *See* POMS DI 2505.015(D).

In addition to the lifting requirements, plaintiff argues that "light" work

"requires a good deal of walking or standing, or when it involves sitting most of

the time with some pushing and pulling or arm or leg controls."  20 C.F.R.

§ 404.1567(b).  Plaintiff avers that the ALJ erred by not including any limitation in

the RFC as to any of these activities, likely in an attempt to keep plaintiff at the

"light" exertional level.

The ALJ gave "great weight" to the opinion of the consultative examiner,

Dr. Lazzara, *except* for his conclusions regarding plaintiff's ability to walk, sit,

and stand:

> Moreover, limiting the claimant's walking, sitting and
> standing to four hours in an eight-hour workday does not
> correlate with the evidence of record, or his examination
> findings, which showed the claimant had a normal gait
> without the use of any assistive device, full strength in
> her lower extremities, normal muscle tone and intact
> sensation (Exhibit 4F/23-24,29, 7F/5, 8, 8F/9-10, 10F/4-
> 7, 18F/4, 15, 18, 21, 23, 26-27, 34-36 and 19F/9-11). (Tr

---

[2]  The POMS regulations instruct that when a plaintiff's exertional capacity falls in the middle of two rules, and the rules direct opposite conclusions, to apply the higher-numbered rule and find the claimant not disabled if the ALJ concludes the claimant has a slightly reduced capacity for the higher level of exertion, or apply the lowered-numbered rule and find the claimant disabled if you conclude that the claimant has significantly reduced capacity for the higher level of exertion.  Plaintiff argues that because she cannot regularly lift ten pounds, she should be limited to sedentary work, and that finding would require a finding of disability.

22).

However, plaintiff claims that a review of the pages cited by the ALJ reveals that positive findings were noted during nearly every one of plaintiff's examinations. Plaintiff notes thirteen examples in her motion for summary judgment of physical impairments that are documented in the medical record. (Dkt. 20, Pg ID 986-987). Considering this evidence, juxtaposed against the evidence cited by the ALJ, plaintiff argues that it simply cannot be said that the ALJ's analysis is supported by substantial evidence.

Plaintiff finally argues that the ALJ erred in finding that plaintiff's part-time work after her alleged onset date discredited her claim of disability. Plaintiff claims that the ALJ ignored that her employment after her accident was part-time, and that her physician's records show that he either instituted or continued that restriction. Plaintiff claims that she is not capable of full-time work as required by the Social Security Regulations. SSR 96-8p.

C.   The Commissioner's Motion for Summary Judgment

The Commissioner contends that the ALJ did not err at Step Five when he determined that a significant number of light jobs exist in the national economy for someone with plaintiff's RFC and vocational profile. At Step Five the ALJ relied on VE testimony which indicated that someone with plaintiff's RFC and vocational profile could perform three representative occupations in the "light"

work category. Plaintiff argues that because there are no sedentary jobs that she can perform, there must also be no "light" jobs that she can perform. However, this is belied by the testimony of the VE who concluded that there are significant number of "light" jobs available. Further, the ALJ made no conclusions about whether the plaintiff was able to perform any sedentary jobs.

The Commissioner also argues that the ALJ followed the dictates of *Damron v. Secretary of Health and Human Services*, 778 F.2d 279 (6th Cir. 1985). In *Damron*, the Sixth Circuit indicated that in light of the claimant's significant non-exertional limitations, it was not permissible for the ALJ to "mechanically" apply the "grid." *Damron*, 778 F.2d at 282. Rather, in light of the claimant's non-exertional restrictions, "it was incumbent upon the ALJ to hear from a vocational specialist." *Id.* In this case, the ALJ enlisted the help of a vocational expert to support his Step Five findings.

The Commissioner contends that the ALJ applied the appropriate grid rule, "light" work, as the ALJ has wide discretion in choosing a grid rule when a claimant can perform a limited range of work at a certain exertional level. POMS DI § 25025.015(D); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003) (considering Social Security Ruling ("SSR") 83-12, and finding "no support" for claimant's attempt "to use the fact that she is not capable of doing all of the jobs in the light work category due to her nonexertional limitation … to drop her category

9

level down to sedentary"); *Hammond v. Apfel*, 211 F.3d 1269 (Table), 2000 WL 420680, at *4-5 (unpublished) (6th Cir. Apr. 12, 2000) (since a vocational expert identified some light jobs that the claimant could perform, ALJ was not required to find that the claimant was limited to the sedentary category); *Casey v. Barnhart*, 76 Fed. Appx. 908, 910-11 & n. 2 (10th Cir. 2003) (reaching same conclusion after considering SSR 83-12, a section of the Social Security Administration's Program Operations Manual System ("POMS"), and a Ninth Circuit precedent on point). In any event, the Commissioner notes that POMS does not have the force and effect of law. *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989).

The Commissioner contends that plaintiff's claim that the ALJ somehow "manipulat[ed] … the analysis … to avoid a finding of disability" should be rejected. The Sixth Circuit holds: "[w]e presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially. [The claimant] has the burden of persuading us otherwise, which she can do only with convincing evidence that a risk of actual bias or prejudgment is present." *Bailey v. Comm'r of Social Security*, 413 Fed. Appx. 853, 856 (6th Cir. 2011) (citations and internal quotation marks omitted); *accord Schweiker v. McClure*, 456 U.S. 188, 195 (1982).

The Commissioner also contends that the RFC determination is supported

by substantial evidence.  To support the RFC, the ALJ assigned "great weight" to state agency reviewing physician, Dr. Tanna.  In fact, the Commissioner argues that the RFC is more favorable to plaintiff's disability claim than Dr. Tanna's opinion, in that the ALJ found manipulative limitations (specifically as to reaching, handling, and fingering) and a limitation as to the use of foot controls, whereas Dr. Tanna found no such limitations.  The Commissioner notes that an ALJ is able to assign greater weight to a reviewing physician opinion than to a treating physician as long as the former is "supported by evidence in the case record."  *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p, 1996 WL 374180, at *2); *accord Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514-15 (6th Cir. 2010).

Dr. Tanna noted the record evidence on which he relied and the ALJ also pointed to significant record evidence that is reasonably consistent with both Dr. Tanna's opinion and the ultimate RFC determination.  Notably, plaintiff does not challenge the ALJ's reliance on any of this evidence, except for the report of consultative examining physician, Dr. Lazzara.  The ALJ gave "great weight" to some aspects of Dr. Lazzara's opinion, but "little weight" to other aspects.  The Commissioner argues that the ALJ provided significant explanation and citations to the record to support his conclusions.

Plaintiff emphasizes that Dr. Lazzara did not opine that plaintiff is able to

11

lift and carry ten pounds frequently, and that such an ability is a part of the regulatory definition of "light" work. But, the ALJ never accepted all of Dr. Lazzara's findings as to how much plaintiff could lift and carry. Moreover, the ALJ accepted the findings of state reviewing physician Dr. Tanna that, from an exertional standpoint, plaintiff can perform "light" work. In particular, Dr. Tanna opined that plaintiff can frequently lift and/or carry ten pounds as required for light work.

Plaintiff also challenges the ALJ's discounting of Dr. Lazzara's finding that plaintiff can only sit, stand, and walk for four hours in an eight-hour work day. But, the Commissioner contends that where, as here, the ALJ discusses the findings of a consultative examining physician, nothing more is required. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Further, the "good reasons" requirement that applies when discounting a treating physician opinion does not apply when discounting the opinion of a consultative physician. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006). Rather,

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.* (quoting *Loral Defense Sys.–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.

1999)).  Moreover, contrary to plaintiff's suggestion, the Sixth Circuit has held that an ALJ's "failure … to explain why he disregarded part of the opinion of a consultative examiner does not warrant reversal." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 468 (6th Cir. 2004).  The Commissioner contends that for this reason, the court should summarily uphold the ALJ's consideration of Dr. Lazzara's opinion.  But even if the court examines the reasons for discounting part of Dr. Lazzara's opinion, the opinion should still be upheld.  The ALJ indicated that he discounted Dr. Lazzara's opinion, in part, because his conclusions regarding plaintiff's ability to sit, stand, and walk "do[] not correlate with ... his examination findings[.]"  In fact, in the report where Dr. Lazzara was asked to identify his medical and clinical findings which supported his assessment, he did not provide a response.  The Commissioner contends that he is not bound by Dr. Lazzara's conclusory statement.

Additionally, the Commissioner argues that the ALJ discounted a portion of Dr. Lazzara's opinion because it did not correlate with the medical evidence. Plaintiff complains that the ALJ did not discuss certain aspects of her specific complaints of tenderness and pain, but according to the Commissioner, the ALJ is not required to explicitly discuss every piece of evidence.  The Commissioner asks the court to reject plaintiff's argument that the ALJ cherry-picked evidence from the record as the Sixth Circuit generally takes a "dim view" of such an argument.

13

On the specific issue of pain, the Commissioner argues that the ALJ's conclusions are further supported by plaintiff's reports that medications were helpful in controlling her symptoms.

The Commissioner finally argues that the ALJ provided numerous reasons for finding plaintiff less than fully credible. In particular, the opinion evidence and other medical evidence that supports the RFC determination, according to the Commissioner, must be viewed as supporting the ALJ's credibility determination since SSR 96-7p provides that an ALJ should take such evidence into account in evaluating credibility. SSR 96-7p, 374186, at *5.

Plaintiff made one specific challenge to the ALJ's credibility determination – that the ALJ suggested that plaintiff's impairments were not as severe as plaintiff alleged because she engaged in part-time work after the alleged disability onset date. The Commissioner argues that because the ALJ's credibility decision was multi-factorial, it would be inappropriate for this court to overturn the ALJ's credibility decision, even if true, on plaintiff's narrow argument.

In any event, the Commissioner points to 20 CFR § 404.1571 which indicates that "[t]he work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level…. Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work

14

than you actually did."

    D.    <u>Plaintiff's Reply</u>

Plaintiff argues that the ALJ purported to give great weight to the medical opinion of Dr. Lazzara, even though he limited her from frequently carrying ten pounds so as to preclude her classification as capable of light work. The Commissioner supplied the opinion of another physician, Dr. Tanna, who determined that plaintiff could lift or carry ten pounds frequently, however, the ALJ never supplied this justification in his opinion. Plaintiff argues that this, in and of itself, represents reversible error and is not limited to the opinions of treating physicians. Plaintiff contends that there is a conflict between what Drs. Lazzara and Tanna concluded with respect to her ability to lift and carry that the ALJ never explicitly or implicitly resolved in his opinion. Plaintiff additionally contends that while this court is not bound by POMS, the ALJ was bound and a finding that plaintiff did not meet the lifting requirements of a given exertional level would be powerful evidence of not permitting a finding of light work.

In addition, plaintiff argues that the ALJ's determination that she did not need any limitations with respect to sitting, standing or walking is not supported by substantial evidence and is internally inconsistent with the ALJ's analysis. Where the ALJ discounts Dr. Lazzara's opinion limiting plaintiff's walking, sitting and standing to four hours in an eight-hour workday because it "does not correlate

15

with the evidence of record, or his examination findings ..." the citations that the

ALJ uses do not actually cite to Dr. Lazzara's findings at all.  Moreover, nearly all

of the citations listed by the ALJ reveal positive findings and limitations.  As a

result, plaintiff argues that the ALJ's decision to discount Dr. Lazzara's opinion is

not supported by substantial evidence.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

16

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007);  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486

17

F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

19

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

        1.    The RFC Analysis

Plaintiff claims that substantial evidence supports her limitations in

carrying/lifting, sitting, standing and walking, and that the ALJ erred when he

discounted state consulting physician Dr. Lazzara's opinion that supported her

limitations in those areas.  These determinations by Dr. Lazzara are particularly

important in this case because had the ALJ credited them, the ALJ would likely

have concluded that plaintiff had the RFC to only perform sedentary work. This

would have likely led to a finding of disability for two reasons, first because

plaintiff would have "gridded out" and, second, based on the testimony of the

vocational expert that no jobs were available at the sedentary level.

Section 201.09 of the Medical Vocational Guidelines deals with residual

functional capacity under Table One, which applies to workers limited to

sedentary work as a result of severe medically determinable impairments.  That

section states that a worker who is closely approaching advanced age (50 to 54

years old), with limited or less education, and with either unskilled or no previous

work experience, is disabled. Section 201.00(g) states:

> Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferrable skills, a finding of disability ordinarily obtains. However, recently completed education which provides for direct entry into sedentary work will preclude such a finding. For this age group, even a high school education or more (ordinarily completed in the remote past) would have little impact for effecting a vocational adjustment unless relevant work experience reflects use of such education.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g).  The ALJ, however, applied § 202.10 in plaintiff's case.  That section is taken from Table Two, which evaluates residual functional capacity limited to light work, and states that a worker who is closely approaching advanced age with limited or less education and unskilled or no previous work experience is not disabled.  The difference between § 201.09 and § 202.10, is defined by the difference between sedentary work and light work.  Specifically, the ALJ determined that plaintiff had the RFC to perform

> light work as defined in 20 CFR 404.1567(b) with: postural limitation of no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional balancing and stooping; no kneeling, crouching or crawling; occasional use of the bilateral lower extremities for operation of foot controls; manipulative limitation for occasional use of the bilateral upper extremities for reaching in all directions and for pushing and pulling; frequent use of the bilateral upper

> extremities for handling and fingering; environmental
> limitation to avoid concentrated exposure to extreme
> cold, extreme heat, vibrations and hazards such as
> moving machinery and unprotected heights; and no
> commercial driving.

(Tr. 14-2, Pg ID 62).

Plaintiff argues that the ALJ impermissibly rejected the medical source statement of Dr. Lazzara, who opined that plaintiff could occasionally lift and carry up to 10 pounds, or between 11 and 20 pounds, thus precluding her from the light work category. (Dkt. 14-13, Pg ID 833). The regulations define "light work" as:

> lifting no more than 20 pounds at a time with frequent
> lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is
> in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time
> with some pushing and pulling of arm or leg controls. To
> be considered capable of performing a full or wide range
> of light work, you must have the ability to do
> substantially all of these activities. If someone can do
> light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting
> factors such as loss of fine dexterity or inability to sit for
> long periods of time.

(20 C.F.R. § 404.1567). In response, the Commissioner argues that the ALJ accorded great weight to the opinion of State Agency medical consultant Dr. Tanna, who concluded that plaintiff could occasionally lift and/or carry 20 pounds, and could frequently lift and/or carry 10 pounds. (Dkt. 14-3, Pg ID 108). Dr.

Tanna found that plaintiff was limited to the light exertional level and the ALJ adopted this finding as being consistent with the record as a whole. (*Id*. at Pg ID 110).

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006). An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted). An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any. 20 C.F.R. § 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987). The Commissioner may not disregard opinions of a consulting physician which are favorable to a claimant. *See Lashley v. Sec'y*, 708 F.2d 1048, 1054 (6th Cir.1983). Moreover, "in weighing medical evidence, 'ALJs must not succumb to the

25

temptation to play doctor and make their own independent medical findings.'"
*Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D.
Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181,
194 (6th Cir. 2009)). An ALJ may not substitute his [or her] own medical
judgment for that of a treating or examining doctor where the opinion of that
doctor is supported by the medical evidence. *See Simpson*, 344 F. App'x at 194;
*see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio
2011) ("An ALJ is not permitted to substitute her own medical judgment for that
of a treating physician and may not make her own independent medical
findings."). This is so even though the final responsibility for the RFC
determination is an issue reserved to the Commissioner. *Allen*, 2013 WL
5676254, at *15.

Further, an ALJ must "explain how any material inconsistencies or
ambiguities in the evidence in the case record were considered and resolved,"
discuss "why reported symptom-related functional limitations and restrictions can
or cannot reasonably be accepted as consistent with the medical and other
evidence," "consider and address medical source opinions," and "[i]f the RFC
assessment conflicts with an opinion from a medical source, ... explain why the
opinion was not adopted." SSR 96-8p.

Here, the undersigned agrees with plaintiff that the ALJ failed to offer a

26

proper explanation as required by SSR 96-8p as to why he discounted the medical

source statement of Dr. Lazzara regarding plaintiff's lift and carry limitations, in

favor of Dr. Tanna's.  While the Commissioner points to Dr. Tanna's RFC

determination as the underpinning for the ALJ's decision, the undersigned finds

that the ALJ merely cited to Dr. Tanna's report, but did not explain and discuss the

inconsistencies between Dr. Tanna's report and Dr. Lazzara's opinion as required

by SSR 96-8p.  Without this analysis, the court is unable to determine how the

ALJ favored Dr. Tanna's lift and carry conclusions over Dr. Lazzara's and if that

choice is supported by substantial evidence.  *See Berryhill v. Shalala*, 4 F.3d 993,

1993 WL 361792 (6th Cir. Sept.16, 1993) ("[A] simple but fundamental rule of

administrative law ... is ... that a reviewing court, in dealing with a determination

or judgment which an administrative agency alone is authorized to make, must

judge the propriety of such action solely by the grounds invoked by the agency. If

those grounds are inadequate or improper, the court is powerless to affirm the

administrative action.") (internal citations omitted).

   In addition, Dr. Lazzara concluded that plaintiff could sit for one hour, and

stand or walk for thirty minutes without interruption.  (Dkt. 14-13, Pg ID 890).  He

also concluded that plaintiff could sit, stand or walk for four hours in an eight hour

work day.  (*Id.*)  The ALJ, however, held that "limiting the claimant's walking,

sitting and standing to four hours in an eight-hour workday does not correlate with

the evidence of record, or his examination findings, which showed the claimant had a normal gait without the use of any assistive device, full strength in her lower extremities, normal muscle tone and intact sensation (Exhibit 4F/23-24, 29, 7F/5, 8, 8F/9-10, 10F/4-7, 18F/4, 15, 18, 21, 23, 26-27, 34-36 and 19F/9-11)." (Dkt. 14-2, Pg ID 67). Plaintiff argues that the ALJ failed to cite Dr. Lazzara's opinion, or make any attempt to show how Dr. Lazzara's examination findings were inconsistent with his conclusions. Further, the citations to the record actually show positive testing and further support Dr. Lazzara's sit, stand, and walk restrictions. The undersigned agrees with plaintiff that the ALJ has failed to engage in the meaningful review that is necessary to show why he discounted Dr. Lazzara's opinion. SSR 96-8p. Further, the undersigned has reviewed the citations to the record that the ALJ used to support his conclusion to discount Dr. Lazzara's opinion and all of the medical evidence appears to contain some type of positive findings that would tend to support Dr. Lazzara's walk, sit, and stand restrictions. Moreover, plaintiff presented additional evidence in her motion for summary judgment (Dkt. 20, Pg ID 986-987), which lists thirteen additional pieces of evidence that would support Dr. Lazzara's restrictions.

For these reasons, in addition to the lift and carry issue outlined above, when re-evaluating the RFC, the ALJ needs to reevaluate the sit, stand and walk restrictions contained in Dr. Lazzara's opinion against the totality of the record

evidence.

Given the above conclusions, the ALJ will have to re-assess plaintiff's

credibility and additional vocational expert testimony may be required, depending

on the conclusions the ALJ reaches on remand regarding plaintiff's RFC.  As

such, the undersigned will not assess plaintiff's arguments on these points now.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, and that the findings of the Commissioner be

**REVERSED AND REMANDED** for proceedings consistent with this Report and

Recommendation.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 2, 2016                    s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 2, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7887
                                        tammy_hallwood@mied.uscourts.gov